UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**MORTGAGE NOW, INC.,**

        **Plaintiff,**              Case No. 3:09cv80/MCR

v.

**BRYAN STONE,
PHILLIP HEPPDING,
and
GUARANTEED HOME MORTGAGE CORPORATION ,**

        **Defendants.**
_____/

## ORDER

This matter is before the court on the motion for preliminary injunction filed March 2, 2009, by plaintiff Mortgage Now, Inc. ("MNI").[1]  The court conducted an evidentiary hearing on the motion March 13 and March 25, 2009, following which the court informed the parties it would rule on the motion March 26, 2009, in an abbreviated order. As explained below, MNI's motion for preliminary injunction is DENIED.

MNI is a licensed mortgage lender that is authorized to conduct business in Florida. MNI sues former branch manager of its Destin, Florida, office and MNI vice-president Bryan Stone ("Stone"); former Destin branch office loan originator Phillip Heppding ("Heppding"); and mortgage lender Guaranteed Home Mortgage Corporation ("GHMC"), MNI's competitor and the prospective employer of Stone and Heppding.  MNI describes

---

[1] By order dated March 3, 2009, the court summarily denied plaintiff's emergency motion for temporary restraining order.

this case as one involving the theft of computerized data, the improper use of proprietary information trade secrets, and the violation of a non-competition agreement.  According to MNI, prior to leaving MNI for employment with GHMC in February 2009, Stone and Heppding misappropriated MNI's trade secrets, proprietary and confidential business information, including loan applicant files, applicant social security and credit card numbers, MNI's propriety Lending Tree information, personnel information, and other information.  MNI's nine-count complaint asserts the following claims: breach of fiduciary duty (Stone); breach of the duty of loyalty (Stone and Heppding); violation of the Florida Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. § 688.001, *et seq*. (Stone, Heppding, and GHMC); civil conspiracy (Stone and GHMC); interference with contractual business relationships (Stone and GHMC); Florida Computer Crimes Act ("FCCA"), Fla. Stat. § 815.01, *et seq*. (Stone, Heppding, and GHMC); accounting (GHMC); breach of contract (Stone); and civil theft (Stone and GHMC).

Issuance of a preliminary injunction pursuant to Fed.R.Civ.P. 65(a) is governed by a well established four-factor test, under which the moving party must establish a substantial likelihood of success on the merits, that it will suffer irreparable injury unless the injunction issues, that the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party, and that the injunction would not be adverse to the public interest. *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.1998); *United States v. Lambert*, 695 F.2d 536 (11th Cir.1983). "The preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant 'clearly carries the burden of persuasion' as to the four prerequisites. . . . 'The burden of persuasion in all of the four requirements is at all times upon the plaintiff.'" *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983); *McDonald's Corp*., 147 F.3d at 1306.

MNI contends that the evidence supports a finding that former MNI employees (who are now or expect to be employed by GHMC) misappropriated MNI's confidential information, Lending Tree leads, loan applicant information, and pending loan applications by downloading the information electronically and transferring it to CD discs and zip drives.

According to MNI, this conduct violates the FCCA and the FUTSA and thus there is a substantial likelihood it will prevail on the merits of its claims under those statutes. Furthermore, MNI argues, the use of this misappropriated information will result in irreparable injury to MNI and, potentially, to loan applicants whose private information was unlawfully disseminated.

As an initial matter, as the court stated at the evidentiary hearing, the evidence is unrebutted that Stone's signature on the employment agreement (which includes, *inter alia*, confidentiality restrictions and a covenant not to compete) is not valid. Thus, based on the evidence now before the court, there is no substantial likelihood that plaintiff could prevail on its claim that Stone violated the employment agreement.

The court next considers plaintiff's contention that defendants have violated the FCCA. Only § 815.04 of the FCCA, which pertains to offenses against intellectual property, and § 815.06, which pertains to offenses against computer users, appear to have any arguable relevance in this case. There are few cases that interpret the FCCA but it appears that neither section has any applicability here. Both are criminal statutes; while § 815.06 additionally provides that a civil action may be brought, the defendant must first have been convicted of violating the statute. Section 815.04 does not appear to be create any civil remedy and thus implies no private right of action. *See, generally, Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) (refusing to infer a private right of action from a "bare criminal statute"). Thus plaintiff has not shown there is a substantial likelihood it would prevail on its claim defendants violated the FCCA.

The court next considers whether MNI can show there is a substantial likelihood it would prevail on its claim defendants violated the FUTSA. The Lending Tree "filters" at issue in this case—which are used to identify "leads, "or prospective MNI loan customers—are preferences selected by MNI, from many thousands of possible choices, which it regularly updates and modifies based on changing market conditions. Lending Tree's data gathering system appears to involve "information, including a formula, pattern, compilation, program, device, method, technique, or process" that "[d]erives independent economic value . . . from not being generally known to, and not being readily ascertainable

by proper means by, other persons who can obtain economic value from its disclosure or use." § 688.002(4). The court finds that plaintiffs have not met their burden of showing the same is true of MNI's use of the Lending Tree filters. From the evidence presented, the court cannot conclude that the filters are not generally known to, and not readily ascertainable by proper means, by others. Under the FUTSA's definition of a trade secret, although "the fact that several competitors each independently use a process that each has independently discovered would not necessarily mean this undisclosed information is no longer a trade secret" because "[t]he undisclosed information could still have actual or potential value, for example, in the sale of the business[,]" *Bestechnologies, Inc. v. Trident Environmental,* 681 So.2d 1175, 1176 (Fla.2nd DCA 1996) (citing Restatement (First) of Torts § 757 cmt. b (1939)), the fact that each of several competitors has discovered the same process can be relevant with regard to whether the information is "generally known" and "readily ascertainable" to competitors. *Id.* (citation omitted). Here, MNI acknowledges that the leads it receives based on the filters it selects are also distributed to a number of other lenders. Presumably, these other lenders have—independently—created their own sets of Lending Tree filters similar to those created by MNI. Further, as noted, MNI's own set or combination of filters is comprised of thousands of identified preferences, which MNI has recorded on a document of some fifty pages in length. Stone testified he had not and could not commit all of these preferences to memory. Additionally, there is no evidence Stone or any defendant has a copy, electronic or otherwise, of the document containing MNI's listed preferences (which in any event would likely have changed since the time Stone left MNI in February 2009). Thus, based on the record before it, the court concludes that the specialized set of filters created and used by MNI does not constitute a trade secret. Moreover, the fact that Stone may apply his knowledge and experience with the Lending Tree system which he gained while employed by MNI, including expertise in selecting filters, does not make such knowledge or expertise a trade secret. As previously noted, no contractual agreement exists that prohibits Stone from using his knowledge or

Case No. 3:09cv80/MCR/MD

training while employed by a competitor such as GHMC.[2] The court therefore concludes that MNI has not clearly shown there is a substantial likelihood it would prevail on its claim defendants violated the FUTSA.

Additionally, the court concludes plaintiff has failed to clearly show irreparable injury. A showing of irreparable injury is "the *sine qua non* of injunctive relief." *Northeastern Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (citation omitted). "[E]ven if plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (*en banc*) (*per curiam*). The evidence before the court reflects that, with the possible exception of one or two client files, there is no MNI confidential and proprietary information currently in the possession of defendants or other former MNI employees nor do they possess any MNI equipment. The harm that might be caused to MNI by the defendants' possible retention of one or two case files is not irreparable. Furthermore, as discussed, based on the evidence presented the court conclude that the filters do not constitute a trade secret within the meaning of Chapter 688. In any event, there is no evidence at this stage of the proceedings that the defendants or other former MNI employees used MNI's information while it was in their unauthorized possession. Nor, the employees having now returned the information, does the evidence show they have the ability to use it in the future. The evidence reflects that no hard copy of the lengthy document on which the filter set selection was recorded has been removed from MNI's premises by defendants and that Stone has not memorized, and could not recite, the contents of the document even if the filters remained static, which they do not. Accordingly, for these reasons, the court concludes that MNI has not clearly shown that it will suffer irreparable harm if the injunction it seeks is not issued.

Based on the evidence presented by the parties, the court finds that plaintiff has not

---

[2] MNI does not claim that the leads themselves are trade secrets belonging to MNI. Even if the leads were considered MNI's trade secrets, the undisputed evidence now before the court is that the defendants do not possess any such leads.

Case No. 3:09cv80/MCR/MD

clearly satisfied its burden of showing there is a substantial likelihood that it will succeed on the merits of its claims or that it will suffer irreparable injury if the injunction is not granted. MNI's motion therefore must be denied.[3]

Accordingly, it is ORDERED:

1. Plaintiff's motion for preliminary injunction (doc. 2) is DENIED.

2. The clerk shall refer this matter to the undersigned for issuance of an initial scheduling order.

DONE and ORDERED this 26th day of March, 2009.

s/ *M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[3] All factual findings are made solely on basis of the limited evidence presented at the March 13 and March 25, 2009, proceedings, without the parties having had the benefit of any discovery. MNI filed an emergency motion for discovery on March 5, 2005, but the motion was denied by the magistrate judge prior to the initial hearing date due to the broadness of the request and the limited time available. MNI did not appeal this ruling.

Case No. 3:09cv80/MCR/MD