**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

MORTGAGE NOW, INC.,

                Plaintiff

v.                                                          CASE NO.:  3:09cv80/MCR/MD

BRYAN STONE, PHILLIP HEPPDING,
and GUARANTEED HOME MORTGAGE
CORP.,

                Defendants
_____/

## O R D E R

Before the court is Defendants Bryan Stone's ("Stone") and Phillip Heppding's ("Heppding") Motion to Dismiss all counts of plaintiff Mortgage Now, Inc.'s ("Mortgage Now") Second Amended Complaint.[1]  Mortgage Now earlier filed a motion for preliminary injunction.  The court held a two-day evidentiary hearing on March 13 and March 25, 2009, following which it denied the motion.  Defendants Stone and Heppding subsequently filed the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and, relying on evidence

---

[1] Mortgage Now, an Ohio corporation doing business in Destin, Florida, pleads nine counts against its former Destin branch manager, Stone; four counts against former employee, Heppding; and seven counts against Guaranteed Home Mortgage Corp. ("GHMC"), a New York corporation also doing business in Destin, Florida. In its Second Amended Complaint, plaintiff's claims include: (1) breach of fiduciary duty (Stone); (2) breach of duty of loyalty (Stone and Heppding); (3) violation of the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001 *et seq*. (Stone, Heppding, and GHMC); (4) civil conspiracy (Stone and GHMC); (5) interference with contractual relationships (Stone and GHMC); (6) violation of the Florida Computer Crimes Act, Fla. Stat. 815.01 *et seq*. (Stone, Heppding, and GHMC); (7) accounting (GHMC); (8) breach of contract (Stone); (9) civil theft (Stone and GHMC); and (10) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Stone, Heppding, and GHMC).

from the hearing, requested the court to convert the motion to one for summary judgment.[2]
After carefully considering the motion and plaintiff's response and supplemental response,
the court finds Stone and Heppding's motion should be granted in part and denied in part.

**BACKGROUND**

Mortgage Now is a licensed mortgage lender providing services in sixteen states
through various branch offices. Prior to 2006, Mortgage Now's business was based
primarily on referrals from real estate agents, personal contacts, and other sources
traditionally used in mortgage lending. The company's Atlanta office, however, also
originated loans through Lending Tree, a company that matches prospective borrowers
with lenders. With Lending Tree, individuals seeking a loan provide Lending Tree with
information such as their credit scores and the requested loan amount. Lenders then
target the borrowers whose business they are most likely to obtain by setting parameters,
or "filters," provided by Lending Tree. By adjusting factors such as credit scores,
bankruptcy status, and the type of loan sought, lenders are able to design filters to sift
through Lending Tree's data and identify the borrowers they want. When a filter selects
a particular borrower's application, the borrower becomes a "lead" whose information a
lender can access by paying Lending Tree a fee.[3] Lending Tree automatically refers each
borrower to several of the nearly 300 lenders who make up Lending Tree's network. The

---

[2] Pursuant to Fed. R. Civ. P. 12(d), the court notified the parties on June 11, 2009, that defendants'
motion would be treated as one for summary judgment. The parties were given until July 2, 2009, to submit
additional evidentiary materials. Mortgage Now filed a supplemental response and exhibits on July 1, 2009,
and the court granted Mortgage Now's motion to file a second amended complaint. Stone and Heppding,
however, did not refile their motion to dismiss in response to the second amended complaint. An amended
complaint supercedes a prior complaint, which "is no longer a part of the pleader's averments against his
adversary." *Dresdner Bank AG v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006) (citation
omitted). Nevertheless, a motion to dismiss can apply to a subsequently-amended complaint when the
amended allegations are substantially similar to those alleged in the earlier complaint. *See Forgione v. State
Farm Mut. Auto. Ins. Co.*, No. 94-7254, 1995 WL 943258, at *2 n.1 (S.D. Fla. Oct. 31, 1995). In this case,
Mortgage Now's second amended complaint contains only minor changes in the fact allegations and does not
affect defendants' motion.

[3] The price for the leads varies according to the nature of the loan, its amount, and the borrower's
credit score. Fees range from $4 for a home purchase to $1,150 for a non-prime rate home refinance.

lenders who have bought the borrower's lead then compete with one another in obtaining the borrower's business.

In April, 2004, Mortgage Now added Bryan Stone to the Atlanta branch as a Lending Tree loan officer. Stone was already experienced in designing Lending Tree filters, which he had used while working for Home Capital in Atlanta to generate over $1 million a month in loans. Stone was also successful in using them at Mortgage Now and eventually became the largest producing loan officer in the Atlanta office. Around June, 2006, the other loan officers in the Atlanta office who used Lending Tree left Mortgage Now. The company then asked Stone to open a new Mortgage Now branch in Destin, Florida. Stone agreed, and in August, 2006, he opened the Destin office and hired Phillip Heppding, whom he had trained as a loan officer while working at Home Capital.[4] The Destin office was unusual among Mortgage Now's branches because it relied primarily on Lending Tree leads to generate business. Under Stone's guidance, it eventually became Mortgage Now's most profitable branch, producing up to 20 percent of the company's total net income.

After the Destin office opened, Mortgage Now decided to expand the use of Lending Tree to some of its other branches. Accordingly, it hired several branch managers who the company believed could adapt to using Lending Tree, which involves a faster process than traditional mortgage lending. Stone began assisting these new branch managers in learning how to design Lending Tree filters, and five branches eventually began using them. Each manager set his or her own filters, depending on factors that were specific to each office. Lending Tree filters can be quickly changed to meet these different requirements. They can also be adjusted to respond to fluctuations in the credit markets. Rapid changes in the mortgage market in late 2007 and 2008 required Stone to shift his filters away from conforming and subprime loans to pursue Federal Housing Administration ("FHA") loans. Trained in FHA requirements by James Marchese ("Marchese"), who became Mortgage Now's chief executive officer in September, 2007, Stone eventually set

---

[4] Stone's resume states that he opened the Destin branch office in September, 2005. In the hearing, however, Stone testified that he opened it in August, 2006.

90 percent of his Lending Tree filters to target FHA borrowers. Stone's success in using the filters gave the Destin office the highest rate of converting leads into actual customers among Mortgage Now's branches, and the company reduced its costs for purchasing Lending Tree leads from $147,000 a month to $60,000.

In December, 2008, Stone was approached by Guaranteed Home Mortgage Corporation ("GHMC"), a competitor of Mortgage Now, about opening a Destin branch for it. After negotiating his own employment terms with GHMC, Stone urged many of his employees at Mortgage Now to consider transferring to GHMC. In late January and early February, 2009, Stone also encouraged those employees who wished to work for GHMC to bring their own laptop computers to the job so they could get email passwords and other information from GHMC while also working on their Mortgage Now desktop computers. Rumors had spread in the Destin office that Mortgage Now was in financial difficulty, and on February 17, Marchese visited the Destin branch to assure Mortgage Now's employees who wished to remain that the company was financially solid. Nevertheless, he fired several employees who wished to follow Stone to GHMC, and additional Destin employees were fired on February 18 and February 24, 2009. Stone himself had already resigned on February 13. The parties dispute what occurred as Stone and other Mortgage Now employees left the company. Stone asked all his co-workers who wanted to join GHMC to sign an affidavit stating they had not taken any leads with them that had been generated while working for Mortgage Now. At least one employee, however, had taken five such leads, and Mortgage Now alleges Stone encouraged other employees to do so as well. Mortgage Now also contends that Stone and Heppding downloaded copies of the Lending Tree filters used in the Destin office, cleaned out, or "scrubbed," their Mortgage Now hard drives to conceal this activity, and took several laptop computers belonging to the company.[5]

---

[5] Testimony showed that at least one Mortgage Now employee, Jimmy Smith, took two computers with him when he left the company in the mistaken belief Stone had bought them for his use. The two computers were returned to Mortgage Now. Three Mortgage Now employees testified Stone encouraged them to download information from their Mortgage Now computers or to transfer files to GHMC before leaving Mortgage Now. Several others denied Stone asked them to take any information from Mortgage Now. These

On March 2, 2009, Mortgage Now filed suit in this court and sought a temporary restraining order or, alternatively, a preliminary injunction preventing Stone, Heppding, and GHMC from contacting any leads generated at Mortgage Now and requiring defendants to return all property taken from Mortgage Now.   The court denied the temporary restraining order on March 3, 2009.  After the evidentiary hearing, on March 26, 2009, the court also denied Mortgage Now's request for a preliminary injunction.  Defendants Stone and Heppding subsequently filed their motion to dismiss on April 21, 2009.

## STANDARD OF REVIEW[6]

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move for the dismissal of a cause of action for failure to state a claim upon which relief can be granted. In reviewing a motion pursuant to Rule 12(b)(6), the court determines only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged.  *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 511 (2002) (quotation omitted).  A court accepts the factual allegations in a complaint as true when ruling on a motion to dismiss under Rule 12(b)(6) and draws all inferences in the plaintiff's favor.  *See Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999).  Rule 12(b)(6) motions are analyzed in conjunction with the legal standard set forth in Rule 8, which requires that a complaint give the defendant fair notice of what the plaintiff's claims are and the grounds on which they rest.   *See Swierkiewicz*, 534 U.S. at 510-12. Consequently, a plaintiff need not plead detailed factual allegations to survive a Rule 12(b)(6) motion, but a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In other words, the complaint must contain sufficient factual matter, accepted as

---

contested fact issues, however, are not relevant to the court's consideration of the motion at hand.

[6] Stone and Heppding correctly rely on evidence from the hearing to argue that Mortgage Now's Lending Tree filters are not trade secrets under Florida law.  Whether information qualifies as a trade secret is an issue of fact which "cannot be resolved on a motion to dismiss." *Greenberg v. Miami Children's Hosp. Research Institute, Inc*., 264 F. Supp.2d 1064, 1076 (S.D. Fla. 2003).  As noted above, the court notified the parties the motion would be converted to one for summary judgment, and the court applies the standard of Fed. R. Civ. P. 56 to the trade secret issue.  The remaining issues considered here do not require evidence outside the pleadings, and thus the court applies the standard of Fed. R. Civ. P. 12(b)(6) to them.

true, to permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. ----, 129 S.Ct. 1937, 1949 (2009).

A motion for summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it could affect the outcome of a suit under the governing law. *Id*. The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992). The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Once the movant satisfies its burden of showing the absence of a genuine issue of material fact, the burden shifts to the nonmovant to produce "specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (emphasis omitted). A general denial unaccompanied by any evidentiary support is not sufficient. Fed. R. Civ. P. 56(e)(2). Instead, the nonmoving party must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604,608 (11th Cir. 1991).

**DISCUSSION**

    1. The Florida Uniform Trade Secrets Act

Mortgage Now alleges that the Lending Tree filters used in its Destin branch, as well as the leads and mortgage applications generated by the filters, constitute trade secrets under the Florida Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. § 688.001 *et seq*. According to Mortgage Now, all three defendants misappropriated these secrets

when Stone and Heppding allegedly took them from Mortgage Now and delivered them to GHMC.  The FUTSA defines a trade secret as information that (1) "[d]erives independent economic value . . . from not being generally known to, and not being readily ascertainable by proper means by, other persons" and (2) "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  *Id*. at § 688.002(4)(a) & (b).  Trade secrets are misappropriated when they are acquired by a person who has reason to know they were obtained by improper means, *id*. at § 688.002(2)(a), including theft and a breach of a duty to maintain secrecy.  *Id*. at § 668.002(1).  Stone and Heppding contend, without further argument, that evidence produced at the hearing shows the Lending Tree filters do not qualify as trade secrets.[7]  Mortgage Now does not dispute this argument in its response or supplemental response.  Instead, it cites the first amended complaint to reallege that Stone and Heppding misappropriated the Lending Tree filters and other confidential information from Mortgage Now.[8]

The court agrees that the Lending Tree filters at issue here do not qualify as trade secrets under the FUTSA.  The plaintiff in a trade secret action bears the burden of demonstrating that it has taken reasonable steps to protect the secrecy of information it claims is protected by the FUTSA.  *See American Red Cross v. Palm Beach Blood Bank, Inc*., 143 F.3d 1407, 1410 (11th Cir. 1998).  Mortgage Now, however, does not argue that it attempted to keep Stone's Lending Tree filters a secret while he was employed by the

---

[7] Stone and Heppding construe Mortgage Now's FUTSA allegation to be limited to the Lending Tree filters themselves.  Nevertheless, both the first and second amended complaints allege the FUTSA was also violated by "the passing to GHMC of leads and mortgage applications made by applicants to" Mortgage Now. (*See* Second Amended Complaint at ¶ 40).  The court's ruling is limited to the filter issue raised by Stone and Heppding.  The court has extended the deadline for filing additional dispositive motions in this case to January 11, 2010, and the parties may address the remaining trade secret issues at that time if they so choose.

[8] By realleging misappropriation, Mortgage Now misconstrues the issue raised by the instant motion. The motion does not address misappropriation, as defined by Fla. Stat. § 688.002(2), but argues the filters do not qualify as trade secrets.  Under the FUTSA, a misappropriation claim requires a prior showing that what was taken is a trade secret.  *See* Fla. Stat. § 668.002(2)(a) ("'Misappropriation' means [a]cquisition of a *trade secret* of another . . . .") (emphasis added).

company.[9]  At the hearing, Mortgage Now showed that it limited access to the Lending Tree filters after Stone left the company by instituting new rules for setting and handling the filters; chief executive officer Marchese testified that the company currently has only one employee who designs filters for all the branch offices that use Lending Tree filters "because we[ ] learned our lesson" after Stone joined GHMC.  By contrast, Mortgage Now has not produced any evidence showing it tried to keep the Lending Tree filters secret while it employed Stone.  Stone testified that while he worked at Mortgage Now, branch managers set their own filters and that, prior to early 2007, he helped them design these filters through informal phone consultations.   No evidence suggests Mortgage Now monitored the managers' use of the filters, placed restrictions on conversations between branch managers, or had any policy concerning the filters.  Managers like Stone did not submit reports about the content or use of the Lending Tree filters, and Mortgage Now has not shown that the company's upper management was even aware of the different filters being used in the various offices.  Consequently, Mortgage Now has failed to bear its burden of demonstrating that it took reasonable steps to keep the filters Stone used in the Destin office secret.

The FUTSA also requires Mortgage Now to show that its filters have value by not being "generally known to, and not being readily ascertainable" by other persons.  Fla. Stat. § 688.002(4)(a).  The evidence shows that Mortgage Now also has not met this standard. The Lending Tree filters are not precise formulas that tell a lender how to respond to fluctuations in the credit markets.   Stone testified that the filters are determined by "subjective decisions . . . based on market conditions."  As such, they are screens created to address the credit market at a specific point in time and require ongoing revision in order

---

[9]  Mortgage Now alleges throughout the second amended complaint that Stone was bound by a branch manager's agreement allegedly executed on March 22, 2006.  Insofar as Mortgage Now relies on the agreement to show it placed reasonable restraints on disclosing the Lending Tree filters during or after employment, the argument is without merit.  The agreement contains a confidentiality provision prohibiting Stone from disclosing Mortgage Now's "plans and techniques for the conduct of its business," including all trade secrets.  A signature purporting to be Stone's appears on the document, but testimony by handwriting expert, James Orsini, showed the signature is a forgery.  Mortgage Now's president, James Schwartz, also failed to sign the agreement.  The confidentiality provision, therefore, was not a condition of Stone's employment because the agreement was never executed.

to continue producing profitable leads.  For example, Stone made between ten and 30 changes to the filters in 2008 as the mortgage market experienced dramatic changes.  The filters, therefore, are preferences chosen by a lender like Mortgage Now from among what Marchese himself testified were almost 100,000 possible combinations of factors.  Lending Tree allows each of its network lenders to target specific types of loans, such as FHA or Veterans Administration Home loans, and adjust criteria concerning bankruptcy status, loan amount, credit scores, and other variables.  None of this information used in designing profitable Lending Tree filters is known only to Mortgage Now.  The requirements for a FHA loan, for example, are not secret, and no evidence suggests that underwriters like Bank of America give Mortgage Now information the underwriters withhold from other lenders.  Nor do Mortgage Now's filters yield results that are unique to the company.  The purpose of a filter is to generate leads from Lending Tree.  Because Lending Tree automatically refers its customers to multiple lenders, each lead Mortgage Now generated through its Lending Tree filter had already been obtained by several other lenders.  Presumably, these other lenders had already discovered the process for producing the same leads as Mortgage Now through an identical filter.  "Information that is generally known or readily accessible to third parties cannot qualify for trade secret protection" under Florida law.  *American Red Cross*, 143 F.3d at 1410; *see also Bestechnologies, Inc. v. Trident Environmental System, Inc.*, 681 So.2d 1175, 1176 (Fla. 2d DCA 1996) (holding that the fact that others have "discovered the same process might be relevant to establish that the information was generally known and readily ascertainable to competitors.") (citation omitted).

Mortgage Now argued at the hearing that the Lending Tree filters are trade secrets because of the specialized training it gave to Stone as part of his efforts to develop them.  Florida courts consider whether information is the product of great expense and effort when deciding if the information qualifies as a trade secret.  *See*, *e.g.*, *Templeton v. Creative Loafing Tampa, Inc.*, 552 So.2d 288, 289-90 (Fla. 2d DCA 1989); *East v. Aqua Gaming, Inc.*, 805 So.2d 932, 934 (Fla. 2d DCA 2001).  In this case, Marchese admitted that he did not tell Stone what filter to set while Marchese was Mortgage Now's CEO.  Marchese did help Stone understand how FHA loans are structured and how they differ

from the kinds of loans Stone had previously targeted.  FHA loan information, however, is readily ascertainable by any lender.  While Mortgage Now provided Stone with expertise in dealing with a part of the mortgage market that was new to him, this training does not implicate the FUTSA because Mortgage Now did not give Stone anything that was secret or proprietary.  *See Health Care Mgt. Consulting, Inc. v. McCombes*, 661 So.2d 1223, 1226 (Fla. 1st DCA 1995) (holding that the FUTSA does not apply to expert training in interpreting Medicare regulations, even when the employer believes the training is confidential, because the regulations are in the public domain).  Mortgage Now also overlooks the fact that Stone was already experienced in designing Lending Tree filters when the company employed him in 2004.  In fact, undisputed testimony showed Mortgage Now had previously sent Stone to its New Jersey branch which was managed at the time by Marchese to train Marchese's loan officers in how to use the Lending Tree filters.[10] Although Stone may have gained additional skill in setting Lending Tree filters while employed at Mortgage Now, Florida law is clear that under the FUTSA "an employer may not preclude its former employee from using . . . expertise gained during his former employment."  *American Red Cross*, 143 F.3d at 1410 (citation omitted); *see also Liberty American Ins. Group, Inc. v. Westpoint Underwriters, L.L.C.*, 199 F. Supp.2d 1271, 1302 (M.D. Fla. 2001).  Consequently, the training Mortgage Now provided Stone during his employment with the company does make Stone's Lending Tree filters, or Stone's expertise in using them, trade secrets under the FUTSA.

As stated above, Mortgage Now's response to Stone and Heppding's motion restates its earlier allegations without further argument.  Federal Rule of Civil Procedure 56(e) states that the nonmoving party "may not rely merely on allegations or denials in its own pleadings" and must submit specific facts showing that a genuine issue exists for trial. Failure to do so requires an entry of summary judgment for the moving party.  *See Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989) ("If the party's response consists of

---

[10]  Stone did not specify when this trip occurred except that it was prior to Marchese becoming the head of Mortgage Now in 2007.  Prior to becoming CEO, Marchese had managed Mortgage Now's office in South Plainfield, New Jersey.

nothing more than a repetition of his conclusory allegations, the district court must enter summary judgment in the moving party's favor."). In light of the evidence and Mortgage Now's failure to bear its burden of proof, the court finds that Stone and Heppding's motion should be granted on the trade secrets issue pursuant to Fed. R. Civ. P. 56.

2. The Florida Computer Crimes Act

Stone and Heppding argue that Mortgage Now cannot assert a claim pursuant to the Florida Computer Crimes Act ("FCCA"), Fla. Stat. § 815.001 *et seq.*, because the statute does not provide a private right of action. Mortgage Now concedes that its FCCA claim should be dismissed. The second amended complaint does not specify which portion of the FCCA the defendants allegedly violated but claims that Stone and Heppding coordinated the theft of several Mortgage Now computers containing proprietary information and that Stone destroyed information on Mortgage Now's office computers. These allegations imply violations of § 815.04(3), which prohibits the unauthorized taking of trade secrets from a computer, and § 815.06(1), which prohibits the unauthorized theft, destruction of, or access to a computer. *See* Fla. Stat. §§ 815.04(3) & 815.06(1). Section 815.04 is a criminal statute without an additional civil remedy. *See* Fla. Stat. § 815.04(4)(a) (defining an offense of that provision as a third degree felony). Although no case has interpreted the issue as it relates to § 815.04, the absence of a civil remedy implies that no private right of action exists. *See*, *generally*, *Cort v. Ash*, 422 U.S. 66 (1975) (refusing to infer a private right of action from a criminal statute). Section 815.06 is also criminal in nature but provides a civil remedy for compensatory damages against a person who has already been criminally convicted under the statute. *See* Fla. Stat. § 815.06(4)(a). The defendants in this case have not been convicted of any crime under § 815.06, and the statute is inapplicable to them. The court therefore finds that Stone and Heppding's motion should be granted on this issue pursuant to Fed. R. Civ. P. 12(b)(6).

3. The Remaining State Law Claims

Stone and Heppding also argue that all of Mortgage Now's remaining state law claims should be dismissed because they are preempted by the FUTSA. The FUTSA provides that it "displace[s] conflicting tort, restitutory, and other law of this state providing

civil remedies for misappropriation of a trade secret." Fla. Stat. § 688.008. The statute further specifies that this preemption does not apply to contractual remedies, whether based on trade secret misappropriation or not, or to "other civil remedies that are not based upon misappropriation of a trade secret." *Id*. at § 688.008(2)(a) & (b). State law claims must be dismissed if they are not separate and distinct from the FUTSA claim. *See New Lenox Industries, Inc. v. Fenton*, 510 F. Supp.2d 893, 908 (M.D. Fla. 2007) (finding that "there must be material distinctions between the allegations comprising the additional torts and the allegations supporting the FUTSA claim."). A state law claim may allege facts asserted in a FUTSA claim, but "if the allegations of trade secret misappropriation *alone* comprise the underlying wrong, only the FUTSA claim will survive the motion to dismiss." *American Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp2d 1170, 1181 (M.D. Fla. 2005). Accordingly, the court must compare the allegations related to the FUTSA claim to those supporting the remaining state law claims.

Mortgage Now alleges that Stone and Heppding violated the FUTSA by misappropriating trade secrets in the form of Lending Tree filters, leads generated by the filters, and existing mortgage applications. According to Mortgage Now, they did so by downloading information from Mortgage Now computers and by encouraging other employees to do so on zip drives Stone and Heppding provided. By contrast, Count I of the second amended complaint alleges that Stone had a fiduciary duty to Mortgage Now because he was vice-president of the company and that he breached that duty by (1) recruiting other Mortgage Now employees to leave the company and join him at GHMC and (2) misappropriating leads and mortgage applications from Mortgage Now and transferring them to GHMC. Similarly, Count II alleges that Stone and Heppding breached a duty of loyalty owed to Mortgage Now by (1) recruiting other employees to quit and (2) taking trade secrets with them. While Counts I and II both contain a misappropriation allegation that overlaps with the FUTSA claim, they also allege that Stone and Heppding breached duties owed to Mortgage Now by inducing their fellow employees to work for GHMC. These allegations arise from the relationship between employer and employee and are distinct from the FUTSA allegations. The FUTSA, therefore, does not preempt Counts I or II.

Count IV alleges that Stone and GHMC engaged in a civil conspiracy to (1) assist Stone in violating his fiduciary duty and duty of loyalty to Mortgage Now, (2) obtain trade secrets, and (3) interfere with Mortgage Now's "contractual relationships" with Stone and other loan officers. The duty of loyalty and fiduciary duty alleged in Count IV involve the same facts alleged in Counts I and II that Stone lured Mortgage Now's employees to leave the company. Like Counts I and II, the first prong of Count IV involves allegations that stem from Stone's status as a Mortgage Now employee and pertains to acts unrelated to the misappropriation of trade secrets. As a result, Count IV is not preempted.

Although not entirely clear, Count V further alleges that Stone and GHMC conspired to interfere "with contractual business relationship" [sic]. Count V does not specify if the business relationship involved was between Mortgage Now and Stone or Mortgage Now and its employees, but it alleges that Stone violated his duty of loyalty and fiduciary duty by recruiting other employees to join GHMC. As such, Count V also involves allegations related to employment relations between Stone and Mortgage Now that are separate from the trade secrets claim, and the FUTSA does not preempt Count V.

Count VII seeks an accounting from GHMC for Mortgage Now's lost profits related to GHMC's alleged (1) misappropriation of trade secrets, (2) assistance in luring Mortgage Now's employees away from the company, and (3) conspiracy with Stone to help him in encouraging others to join GHMC. The first of these allegations is identical to the FUTSA claim. The second and third, however, again involve unrelated employment relations, and the FUTSA does not preempt Count VII.

Count VIII alleges Stone breached his contractual duties to Mortgage Now by violating the noncompete provisions in the March 22, 2006, branch manager agreement described above. The FUTSA specifically exempts from preemption contractual remedies "whether or not based upon misappropriation of a trade secret." Fla. Stat. § 668.008(2)(a). FUTSA, therefore, does not preempt Count VIII.

Finally, Count IX alleges that Stone and GHMC committed civil theft by wrongfully taking Mortgage Now's leads and the mortgage applications the company obtained by paying fees to Lending Tree. Although Mortgage Now elsewhere alleges Stone stole the

company's laptop computers, Count IX is limited to the alleged misappropriation of leads and applications. Unlike the other state law claims, Count IX relies on the same fact allegations as those in the FUTSA claim, and that statute preempts the civil theft allegation in Count IX.

Pursuant to the standard of Fed. R. Civ. P. 12(b)(6), the court finds that the FUTSA does not preempt Count I (breach of fiduciary duty); Count II (breach of the duty of loyalty); Count IV (conspiracy); Count V (interference with contractual relations); Count VII (accounting); or Count VIII (breach of contract). The FUTSA does preempt Count IX (civil theft).

### 4. The Computer Fraud and Abuse Act

Finally, Stone and Heppding contend that Mortgage Now has not properly asserted a claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, because it has not alleged that Stone or Heppding accessed a computer in violation of the statute. Primarily a criminal statute, the CFAA also provides a civil cause of action to "[a]ny person who suffers damage or loss by reason of a violation of this section . . . if the conduct involves 1 of the factors set forth in subclauses [1 - 5] of subsection (c)(4)(A)(i)."[11] 18 U.S.C. § 1030(g). Mortgage Now argues that it has met the CFAA's pleading requirements by alleging facts that satisfy the factor set forth in § 1030(c)(4)(A)(i)(I), which requires the "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." *Id*. at § 1030(c)(4)(A)(i)(I). In support, Mortgage Now points to allegations in the second amended complaint claiming the company suffered a loss in excess of $5,000 when Stone and Heppding allegedly stole proprietary information from their Mortgage Now computers and "scrubbed" their computers' hard drives to conceal their activity.

The court agrees with Stone and Heppding that, as it stands, these allegations are insufficient to state a claim under the CFAA. Mortgage Now interprets § 1030(g) to require a plaintiff wanting to assert a private cause of action to plead (1) damage or loss and (2)

---

[11] Under the CFAA, "damage" means "any impairment to the integrity or availability of data, a program, a system, or information[.]" 18 U.S.C. § 1030(e)(8). "Loss" means "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense . . . ." *Id.* at § 1030(e)(11).

one of the five factors listed under § 1030(4)(A)(i). The statute, however, also states that the alleged damage or loss must occur "by reason of a violation of this section." *Id*. at § 1030(g). The phrase "this section" does not refer to § 1030(g), which does not itself proscribe any conduct, but to § 1030 in its entirety. *See Fiber Systems Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1157 (5th Cir. 2006) ("Section 1030(g) extends the ability to bring a civil action to any person suffering damage or loss under 'this section,' which refers to § 1030 as a whole."). Section 1030(a) provides seven possible violations of the CFAA.[12] Mortgage Now, however, does not specify which subsection it relies on. Four of the subsections in § 1030(a) involve improper access to information that has been deemed a secret by the federal government, access to computers used by the federal government, unauthorized password trafficking, or threats to damage a computer in order to extort money from another party. *See* 18 U.S.C. §§ 1030(a)(1), (3), (6) & (7). Mortgage Now does not allege any facts supporting these claims.

The remaining three subsections of § 1030(a) prohibit access to computers of financial institutions, access to a computer with an intent to defraud, or access that recklessly causes damage. *See id*. at §§ 1030(a)(2), (4), & (5). Mortgage Now does allege Stone and Heppding intentionally accessed its computers and thereby caused damage, but this is insufficient to plead a violation of the CFAA. Sections 1030(a)(2), (4), and (5) also require a plaintiff to show that the defendant accessed its computer "without authorization." In its response, Mortgage Now realleges that Stone and Heppding took laptop computers "without permission" when they left for GHMC, but a common law claim of theft is not the kind of unauthorized access implicated by the CFAA. *See Int'l Ass'n of Machinists and Aerospace Workers v. Werner-Masuda*, 390 F. Supp.2d 479, 495-96 (D. Md. 2005) (stating that the general purpose of the CFAA "was to create a cause of action against computer hackers (e.g., electronic trespassers)") (citation omitted). The CFAA does not define what "without authorization" means under the statute, and courts have split

---

[12] Although the Eleventh Circuit has not yet ruled on this issue, other circuits have held that § 1030(g) enables a plaintiff to bring a private cause of action for any violation of the CFAA. *See, e.g.*, *Fiber Systems Int'l, Inc.*, 470 F.3d at 1157; *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 n.5 (9th Cir. 2004).

on the phrase's interpretation.[13]  The Eleventh Circuit has not decided the issue, but "[d]istrict courts in this circuit have held that a violation under the CFAA for access 'without authorization' occurs only where initial access is not permitted." *Vurv Technology LLC v. Kenexa Corp.*, No. 1:09-cv-3442, 2009 WL 2171042, at *6 (N.D. Ga. July 20, 2009) (internal quotation omitted); *see also Lockheed Martin Corp. v. Speed*, No. 6:05-cv-1580, 2006 WL 2683058, at *5 (M.D. Fla. Aug. 1, 2006).  The second amended complaint plainly fails to meet this standard.  Instead of claiming Stone and Heppding impermissibly opened computer files containing the Lending Tree filters, Mortgage Now admits they had proper access "to the highest level of trade secrets, proprietary and confidential business information."  A party who is permitted to view such information does not act without authorization when he accesses it.  In order to state a claim under the CFAA, Mortgage Now must identify the subsection of § 1030(a) it relies on and allege facts supporting the specific requirements listed in the statute.

The court, therefore, finds that Stone and Heppding's motion should be granted on this issue pursuant to Fed. R. Civ. P. 12(b)(6); however, in light of the possibility that Mortgage Now may be able to allege facts that meet the Rule 12(b)(6) standard, the court also finds Mortgage Now should be allowed to amend its complaint on this issue alone.

**CONCLUSION**

Pursuant to Fed. R. Civ. P. 56, the court finds that Mortgage Now has not shown a genuine issue of material fact that its Lending Tree filters are trade secrets under Florida law.  The court also finds pursuant to Fed. R. Civ. P. 12(b)(6) that Mortgage Now cannot assert a claim under the Florida Computer Crimes Act and that its second amended complaint does not allege facts sufficient to show above a speculative level that it can assert a claim under the Computer Fraud and Abuse Act.  Finally, the court finds that

---

[13]  Some courts have defined this term broadly as occurring whenever an employee accesses a computer without the knowledge of the employer.  *See*, *e.g.*, *Int'l Airport Ctrs., L.L.C. v. Citrin*, 440 F.3d 418, 420-21 (7th Cir. 2006).  Other courts have taken a narrower view, holding that the phrase only reaches conduct by nonemployees who do not have authorized access to the plaintiff's computers.  *See*, *e.g.*, *Shamrock Foods Co. v. Gast*, 535 F. Supp.2d 962, 965-66 (D. Ariz. 2008).  Mortgage Now's allegations fail to meet either standard.

Case No. 3:09cv80/MCR/MD

Count IX of the second amended complaint is preempted by the Florida Uniform Trade Secrets Act.

Accordingly, it is hereby ORDERED:

1.      Defendants Stone and Heppding's Motion to Dismiss (doc. 49) is GRANTED as it relates to Count VI (Florida Computer Crimes Act) and Count IX (civil theft) of the second amended complaint.  These claims are DISMISSED WITH PREJUDICE;

2.      The Motion to Dismiss is GRANTED as it relates to Count III (Florida Uniform Trade Secrets Act).  Mortgage Now's claim concerning the Lending Tree filters in Count III is DISMISSED WITH PREJUDICE.  This order does not reach Mortgage Now's claims in Count III concerning the Lending Tree leads and mortgage applications;

3.      The Motion to Dismiss is GRANTED as it relates to Count X (Computer Fraud and Abuse Act), and this claim is DISMISSED WITHOUT PREJUDICE.  If Mortgage Now wishes to amend its complaint concerning this claim, it may do so within ten (10) days of entry of this order; and,

4.      The Motion to Dismiss is DENIED as it relates to Count I (breach of fiduciary duty), Count II (breach of duty of loyalty), Count IV (civil conspiracy), Count V (interference with contractual relationships), Count VII (accounting), and Count VIII (breach of contract).

**DONE AND ORDERED** this 24th day of November, 2009.


s/ *M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**


Case No. 3:09cv80/MCR/MD