IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MORTGAGE NOW, INC.,
    Plaintiff,

vs.                                        No. 3:09cv80/MCR/MD

BRYAN STONE, PHILIP HEPPDING,
and GUARANTEED HOME MORTGAGE
CORPORATION,
    Defendants.
_____

# ORDER

Before the court is a motion to compel filed by defendant, Guaranteed Home Mortgage Company (GHMC) (doc. 142) to which plaintiff, Mortgage Now, Inc. (MNI) has responded (doc. 148). After reviewing MNI's response, the court ordered GHMI to justify its position that it needed information concerning mortgages that were not paid off within 72 hours of the disbursement date (doc. 150), and GHMC has responded (doc. 155). The factual background in this case was fully discussed in the district judge's order granting, in part, GHMC's motion to dismiss (doc. 128) and will not be repeated here. In sum, however, under the subsequently-filed third amended complaint,[1] MNI alleges that defendants Stone and Heppding breached their fiduciary duties as employees of MNI and acted unlawfully to steal information, expertise and employees from MNI to the benefit of a competitor, GHMC.

---

[1] The seven counts of the third amended complaint are (1) breach of fiduciary duty (Stone), (2) breach of loyalty (Heppding), (4) civil conspiracy (Stone and GHMC), (5) interference with contractual business relationships (Stone and GHMC), (7) accounting (GHMC), (8) breach of contract (Stone), (10) computer fraud and abuse Act (Stone and GHMC). Counts 3, 6 and 9 of the second amended complaint had earlier been dismissed with prejudice (doc. 128).

The discovery issue now before the court relates to GHMC's interrogatories and requests relative to (1) MNI's alleged failure to pay off original mortgages in a timely manner, and (2) MNI's claim for damages.

GHMC, alleged to be a co-conspirator with Stone, now seeks information and documentation to support its position concerning the alleged late-payment of original mortgages and concerning alleged payroll problems. It argues that the information is relevant because MNI has affirmatively alleged that as part of the conspiracy, Stone "embarked upon a prohibited and tortious scheme to disrupt the business operations" of MNI by, among other things, "disseminating [to other employees] false information, rumors, and false innuendos regarding his employer" and further that Stone "manipulated the payroll by submitting the wrong information to the corporate payroll department which laid the groundwork for dissent amongst the rank and file." (Third Amended Complaint, doc. 131, ¶¶ 16, 18-19).[2] GHMC says that discovery into these matters is necessary to show that what Stone told his employees was not false, or mere rumor or innuendo, but was true, and that payroll problems were caused not by any error, intentional or otherwise, on Stone's part, but because MNI was short of cash.

MNI argues that the information concerning its business operations, including its alleged failure to make timely payments on old mortgages is irrelevant, because Stone was an employee at will, could have left the company at any time, and should not be allowed to justify his departure because the reason for his departure is irrelevant. MNI also says that there is no specific time limit within which existing mortgages must be paid off, either by statute, regulation or other law or contract,

---

[2] In its original complaint MNI put a little more flesh on it allegations, stating that Stone was "spreading false and malicious information to current MNI employees and others concerning MNI's 'faltering' business operations, future business plans, its 'poor' financial strength, and its 'inability' to compete in the marketplace." (Complaint, doc. 1, ¶ 19-7). The fact that this language is not in the third amended complaint is unimportant, because its earlier inclusion put defendants on notice of the specifics of MNI's current general allegations of disruptions, false information, rumors and innuendos.

*Case No: 3:09cv80/MCR/MD*

and that paying off old mortgages two to three weeks after closing on the refinancing was industry standard practice.

Based on discovery to date, GHMC paints this picture of events leading up to Stone and Heppding leaving MNI's employ and going to work for GHMC: When an individual sold a home, or wanted to refinance a mortgage on his or her home, MNI, like other mortgage lenders, would handle the financing or refinancing. As part of the closing, sufficient money would be provided by the lender to pay off the borrower's existing mortgage.[3] Additional money for expenses, including the lenders fees, would also be included, and would become part of the debt owed by the homeowner to MNI. MNI would then sell the mortgage package on the secondary market and inform the borrower as to when the first payment on the new mortgage should be made, and to whom. In the meantime, MNI would disburse the money it had loaned to the borrower in accordance with the HUD-1, commonly called the Settlement Statement. That is, MNI would pay for the appraisers, documentary stamps, title policy, taxes, recording fees and related expenses, would pay itself origination and other fees for handling the transaction, and would pay off the existing mortgage. But, because of market conditions, or because of mismanagement, negligence or some other internal or external conditions, MNI became cash strapped in the last quarter of 2008 and the first quarter of 2009. But, because it was loaning money to borrowers for the purpose of purchase or refinancing, it had to have the cash to pay whatever was required in the loan documents, particularly the existing mortgage payoff. Lacking sufficient funds to pay all that was required of it, MNI delayed paying off the original mortgages.

---

[3] It is unclear from what is currently before the court whether the relevant underlying transactions were refinancings by existing property owners or the purchaser of a property being financed. The existing mortgage for the person refinancing would be the mortgage he or she currently had on the property but would be paying off with new money. In the case of a purchase and sale, the borrower would be the purchaser who borrowed sufficient funds to pay off the seller's existing mortgage. Hence, the court's use of the term "borrower" covers both instances.

In the sealed attachments to its response to the court's inquiry, GHMC has identified a borrower, JWT, who used MNI to refinance his existing Chase Home Finance LLC (Chase) mortgage. The closing was done through MNI's in-house title company, ESQ Title Agency, LLC (ESQ). According to the Settlement Statement, the closing was held on December 23, 2008. The total amount borrowed by JWT was $240,000. Of that amount, JWT received $50,350.06, Chase received $157,595.75 (the pay-off), there were six payments other banks totaling $21,448 (presumably for credit cards), and $10,606.19 went to closing costs, including MNI's fees (doc. 155, ex. A (sealed)). Attached to the Settlement Statement is a certification that the closing agent "caused or will cause the funds to be disbursed in accordance with the statement." As required by HUD regulations, JWT was given three business days to cancel the refinancing (*id*., ex. B (sealed)). JWT did not cancel, and on December 29, 2008 MNI requested $82,404.25 from its warehouse line (apparently its own line of credit). The amount requested included all the disbursements on the Settlement Statement other than the amount needed to pay the Chase mortgage (*id*., ex. H (sealed)).[4] The loan package was sold to Countrywide Home Loans, Inc. on December 31, 2008, and JWT was so notified (*id*., ex. E (sealed)).

Chase had earlier notified MNI that the pay-off amount of its mortgage was $157,565.75 through January 9, 2009, and that thereafter interest would accrue at $25.67 per day (*id*. ex. I (sealed)). MNI finally paid Chase $157,595.75 on February 13, 2009 (*id*.). By that date, the original pay-off amount had expired by more than a month and additional interest totaling approximately $900, which was not paid, had accrued. In the meantime, on February 8, 2009 Chase informed JWT that he was in arrears because the payments due on January 1 and February 1, 2009 were past due

---

[4] Out of this disbursement, MNI paid itself $3590 in fees and paid ESQ $875 in fees plus $1275 for the ESQ title policy,

*Case No: 3:09cv80/MCR/MD*

(*id*., ex. L (sealed)).[5]

Anita Buckley, an officer of MNI, testified that she made the payment to Chase late because MNI's warehouse line was "maxed out;" that she did so on orders from the CEO of MNI, Mr. Marchese; that she did this on other accounts - possibly as many as sixty other accounts according to notations on relevant documents - when Mr. Marchese told her to; and that she did so only on those accounts closed by MNI's in-house closing agent, ESQ (*id*., ex. G (sealed)).

GHMC says this and other documentation showing late pay-offs indicate that MNI's handling of these accounts was fraudulent. One of the major issues in the instant discovery dispute concerns GHMC's request for documentation and information as to all pay-offs that MNI made after more than 72 hours had elapsed after closing. MNI says that this request is meaningless and will not lead to relevant discoverable evidence, that there is no law, regulation or other requirement that says a pay-off has to be made within 72 hours, and that such payment could not possibly be made anyway because of the three day cancellation period. GHMC also objects with the usual boilerplate, saying the requests are burdensome, irrelevant, immaterial and so on.

The court finds that the motion to compel is well taken. MNI clearly made a late pay-off to the detriment of JWT and an officer of MNI testified that she made late payments when MNI's warehouse line was maxed out, meaning when MNI did not have sufficient funds available to make timely pay-offs. As to MNI's argument that the requested 72 hour period is unsupported, GHMC explains that it chose that time period because it allows for week-ends and holidays if the disbursement date falls

---

[5]This tends to disprove MNI's claim that it was industry practice to pay off existing mortgages in 15-20 days from <u>funding</u>. Chase told MNI that it's pay-off figure was good only until January 7, 2009, which was seventeen days from <u>closing</u>. Chase expected to be paid on time, and it was not, to JWT's detriment.

*Case No: 3:09cv80/MCR/MD*

on such a day.[6] That is, after the three day cancellation period runs, the disbursement date is immediate. GHMC wants to know when pay-offs were made *after* the disbursement date. GHMC has also provided an affidavit from a local real estate attorney that says disbursements, including pay-offs, must be made on the disbursement date or immediately thereafter (*id.*, ex. N). MNI says this is not so, and presents an internal memorandum stating that the industry standard is for pay-offs to be made "15-20 days from 'funding,' not closing." (Doc. 148, ex. 2). The issue is in dispute, but it need not be resolved here. Based on the foregoing analysis, the court finds that MNI bases its fraud claims on alleged untruths on the part of Stone, but there is evidence that Stone may have been truthful when he said MNI was in financial difficulty and was not making pay-offs on time.

There were also allegedly problems with payroll, with employees getting paid late, or with payroll checks bouncing. Stone became aware of these practices and problems. He allegedly came to believe that MNI was possibly going under, but in any event was acting improperly or even unlawfully. This ultimately led to his voluntary departure from MNI, his taking his primary assistant, Heppding, with him, along with a large number of other employees, and, according to the third amended complaint, sensitive commercial information and equipment. Discovery of the materials relating to these issues is relevant. MNI raised the alleged tortious conduct in its third amended complaint. Since MNI proposes to prove that Stone was spreading false information about his employer, the defendants must be able to confront the alleged falsity of the statements by showing that the statements were true.

---

[6] GHMC's argument that it is impossible to make payment within 72 hours of the disbursement date conflates the closing date and the disbursement date. Three days are allowed for cancellation after the <u>closing date</u>, and the <u>disbursement date</u> is the day upon which the three day cancellation period expires. MNI disbursed on JWT's loan on the disbursement date, but the disbursement did not include the Chase pay-off.

*Case No: 3:09cv80/MCR/MD*

**Finally, MNI's claim that the discovery is burdensome is unsupported by any analysis or supporting documentation, and from what is before the court, it appears that computer-generated information will provide most of the answers. MNI also contends that disclosing this information to a competitor will put it at a competitive disadvantage. That claim is nowhere justified. There is nothing in the information requested that can be characterized as trade secrets or that may show how MNI does its business that is not available to businesses generally. Finally, MNI's claims are conclusory only, with no specific explanation of how GHMC can gain a competitive advantage in getting these data. If there is any specific document or information that supports MNI's claim, MNI has not identified it. In any event, discovery material is subject to an "attorney eyes only" confidentiality agreement and order in this case (doc. 62).**

**As a final comment, I see that counsel are quibbling over whether there was a good faith attempt to resolve their differences before the instant motion was filed. Holidays and vacations do get in the way at times, but I don't see that as the real issue here. Cooperation by both sides is the issue. I need not decide now who was or was not cooperating. Rather, I will point counsel to my sample discovery order under Attorney Resources at www.flnd.uscourts.gov. That will be my next order if there are any further discovery disputes.**

**Accordingly, discovery will be had as follows:**

<u>**As to GHMC's 3rd Request for Production served August 6, 2009:**</u>

1.  **Plaintiff shall respond fully to Request for Production No. 2. Plaintiff's objections to the request are overruled.**

2.  **Plaintiff shall respond fully to Request for Production No. 3. Plaintiff says these materials have been provided. If they have been, so be it. If not, they will be. Because plaintiff said it will produce the documents, the objections in the preface to plaintiff's answer have been waived.**

3.  **Plaintiff shall respond fully to Request for Production No. 4. Plaintiff's objections to the request are overruled.**

*Case No: 3:09cv80/MCR/MD*

4. **Plaintiff shall respond fully to Request for Production No. 5. Plaintiff's objections to the request are overruled.**

5. **Plaintiff shall respond fully to Request for Production No. 6. Plaintiff's objections to the request are overruled. Moreover, plaintiff says that there was no failure to pay health and dental plan premiums, only that MNI changed insurers and was self-insured for a month. That may be true, but the reason for changing insurers may likely shed light on whether Stone was being dishonest in criticizing the operation, or was spreading false rumors as plaintiff claims.**

6. **Plaintiff shall respond fully to Request for Production No. 7 company-wide, not just for its Destin, Florida office. Plaintiff says these materials have been provided for Destin. If they have been, so be it. If not, they will be, along with documents for its other offices. Plaintiff's objections to the request are overruled.**

7. **Plaintiff shall respond fully to Request for Production No. 8 company-wide, not just for its Destin, Florida office. Plaintiff says these materials have been provided for Destin. If they have been, so be it. If not, they will be, along with documents for its other offices. Plaintiff's objections to the request are overruled.**

8. **Plaintiff shall respond fully to Request for Production No. 9 company-wide, not just for its Destin, Florida office. Plaintiff says these materials have been provided for Destin. If they have been, so be it. If not, they will be, along with documents for its other offices. Plaintiff's objections to the request are overruled.**

9. **Plaintiff shall respond to Request for Production No. 13, but only to the extent that a corporate employee or officer used his or her personal credit card for purchases or payments greater than $5000.00. Plaintiff's objections to the request are otherwise overruled.**

**As to GHMC's 8th Interrogatories served November 20, 2009:**

10. **Plaintiff shall respond fully to Interrogatory No. 1. Plaintiff's objections to the request are overruled.**

**As to GHMC's 7th Interrogatories served September 29, 2009:**

11. **The motion as to Interrogatory No. 1 is denied. Plaintiff says that**

locked loans were not recorded before December 1, 2008, and that information after that date has been provided. Plaintiff is not required to answer questions from earlier dates when the same information is available to defendant from third parties.

12. The motion as to Interrogatory No. 3 is denied. Plaintiff says that locked loans were not recorded before December 1, 2008, and that information after that date has been provided. Plaintiff is not required to answer questions from earlier dates when the same information is available to defendant from third parties.

**As to GHMC's 5th Request for Production served November 20, 2009:**

13. **Plaintiff shall respond fully to Request for Production No. 2. Plaintiff's objections to the request are overruled.**

14. **Plaintiff shall respond fully to Request for Production No. 3. Plaintiff's objections to the request are overruled.**

15. **Plaintiff shall respond fully to Request for Production No. 4. Plaintiff's objections to the request are overruled.**

Accordingly, it is ORDERED that GHMC's motion to compel (doc. 142) is granted in part in accordance with the foregoing numbered paragraphs, and

A. the foregoing will be accomplished no later than fourteen (14) days from the date this order is docketed, and

B. Plaintiff shall pay to defendant, GHMC, the sum of $2500.00 for its fees and expenses in filing and briefing the instant motion. Any party desiring to be heard either as to the award or the amount should file an appropriate motion with supporting documentation within ten (10) days.

**DONE AND ORDERED** at Pensacola, Florida this 15th day of January, 2010.

/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

*Case No: 3:09cv80/MCR/MD*